UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY APEL,

        Plaintiff,

v.

MONARCH RECOVERY
MANAGEMENT, INC.,

        Defendant.
_____/

## I. Introduction

1. This is an action for damages brought against a debt collector for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Michigan Occupational Code ("MOC") M.C.L. § 339.901 *et seq.*

## II. Jurisdiction

2. This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here.

## III. Parties

3. Plaintiff Gregory Apel is an adult, natural person residing in Kent County, Michigan. Mr. Apel is a "consumer" and "person" as the terms are defined and used in the FDCPA. Mr. Apel is a "consumer," "debtor" and "person" as the terms are defined and used in the MOC.

1

4. Defendant Monarch Recovery Management, Inc. ("MRM") is a Pennsylvania corporation, purportedly located at 10965 Decatur Road, Philadelphia, Pennsylvania 19154. The registered agent for MRM in Michigan is The Corporation Company, 30600 Telegraph Road, Suite 2345, Bingham Farms, Michigan 48025. MRM uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. MRM regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. MRM is a "debt collector" as the term is defined and used in the FDCPA. MRM and its employees are licensed (Nos. 2401001611, 2401002495, 2402001612 and 2402002448) by the State of Michigan to collect consumer debts in Michigan. MRM is a "collection agency" and "licensee" as the terms are defined and used in MOC.

### IV. Facts

5. Mr. Apel had a credit account (No. 5178 0060 6228 6432) with First Premier Bank which he used to purchase goods and/or services for personal, family and household purposes. Any resulting obligation of Mr. Apel to pay money in connection with the account was a "debt" as the term is defined and used in the FDCPA and MOC.

6. Mr. Apel allegedly failed to make payment on the account when due and the account allegedly went into default.

7. Mr. Apel had a dispute with First Premier Bank regarding the account and the amount of the alleged debt.

8. Mr. Apel refused to pay money to First Premier Bank in connection with the disputed account and alleged debt.

9. Mr. Apel continues to dispute the alleged debt. Mr. Apel continues to refuse to

pay money to First Premier Bank or to any other entity in connection with the account.

10. First Premier Bank charged off the account.

11. First Premier Bank sold the account and related, alleged debt.

12. First Premier Bank no longer owned any interest in the account.

13. First Premier Bank no longer claimed that Mr. Apel owes any debt to First Premier Bank in connection with the account.

14. An entity named Asset Acceptance, LLC ("Asset") supposedly purchased the delinquent and charged-off account.

15. Asset paid less than five cents on the dollar for the account.

16. Asset placed the account with MRM for collection.

17. On September 5, 2012 at approximately 12:24 p.m., someone placed a telephone call to Mr. Apel's telephone. The caller did not leave a message on Mr. Apel's voice mail. Mr. Apel's caller identification showed that the call originated from telephone number 800-640-9072.

18. On September 5, 2012 at approximately 2:25 p.m., someone placed a second telephone call to Mr. Apel's telephone. The caller did not leave a message on Mr. Apel's voice mail. Mr. Apel's caller identification showed that the call originated from telephone number 800-640-9072.

19. On September 5, 2012 at approximately 4:25 p.m., someone placed a third telephone call to Mr. Apel's telephone. The caller did not leave a message on Mr. Apel's voice mail. Mr. Apel's caller identification showed that the call originated from telephone number 800-640-9072.

20. On September 6, 2012 at approximately 9:49 a.m., someone placed a fourth

telephone call to Mr. Apel's telephone. The caller did not leave a message on Mr. Apel's voice mail. Mr. Apel's caller identification showed that the call originated from telephone number 800-640-9072.

21. On September 6, 2012 at approximately 8:20 p.m., someone placed a fifth telephone call to Mr. Apel's telephone. The caller did not leave a message on Mr. Apel's voice mail. Mr. Apel's caller identification showed that the call originated from telephone number 800-640-9072.

22. On September 10, 2012, Mr. Apel placed a call to telephone number 800-640-9072. The call was answered by a pre-recorded greeting which stated: "For quality assurance, this call may be monitored or recorded." The call then was answered by a person who stated: "Hello. Jackie Foster. How may I help you?" Mr. Apel stated that he had received multiple calls from telephone number 800-640-9072 and that he was calling to find out who was calling. Ms. Foster stated that the calls were from Monarch Recovery Management, Inc., regarding a balance of $566.08 owed in connection with an account with First Premier Bank. The MRM employee asked Mr. Apel to pay the debt. Mr. Apel repeatedly stated that he did not think the account was his. Mr. Apel repeatedly asked the MRM employee whether MRM was collecting the debt for First Premier Bank or for someone else. The MRM employee repeatedly avoided answering the question. Accordingly, Mr. Apel stated that he disputed the debt and he instructed the MRM employee to communicate to First Premier Bank or whomever MRM was working for that Mr. Apel disputed the debt. The MRM employee relied that First Premier Bank had assigned the account to MRM for collection. The MRM employee stated that MRM was helping First Premier Bank collect the debt. The MRM employee stated that for Mr. Apel to dispute the

debt, Mr. Apel was required to fill out forms to be supplied by MRM and then send the forms back to MRM. The MRM employee stated that for Mr. Apel to dispute the debt, Mr. Apel would have to dispute the debt directly with First Premier Bank. The MRM employee expressly stated that First Premier Bank currently owned the account. Mr. Apel asked the MRM employee to provide him with a telephone number to contact First Premier Bank. The MRM employee refused to provide Mr. Apel with a telephone number to contact First Premier Bank and told Mr. Apel to look it up on Google.

23. The MRM employee falsely represented and falsely implied in the above-described conversation with Mr. Apel that MRM was attempting to collect the alleged debt for First Premier Bank.

24. The MRM employee falsely represented and falsely implied in the above-described conversation with Mr. Apel that First Premier Bank had assigned the account to MRM for collection.

25. The MRM employee falsely represented and falsely implied in the above-described conversation with Mr. Apel that MRM was helping First Premier Bank collect the alleged debt.

26. The MRM employee falsely represented and falsely implied in the above-described conversation with Mr. Apel that First Premier Bank currently owned the account.

27. It is unlawful for a debt collector to make a false representation of the character, amount, or legal status of any debt. 15 U.S.C. § 1692e(2)(A).

28. It is unlawful for a debt collector to communicate or threaten to communicate to any person credit information which is known or which should be known to be false, including

the failure to communicate that a disputed debt is disputed. 15 U.S.C. § 1692e(8).

29. It is unlawful for a debt collector to use "any false representation or deceptive means to collect or attempt to collect any debt. . . ." 15 U.S.C. § 1692e(10).

30. It is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization. 15 U.S.C. § 1692e(14).

31. MRM and its employee violated the FDCPA, 15 U.S.C. § 1692e(2)(A), (8), (10) and (14).

32. The least sophisticated consumer in deciding whether to pay an alleged debt would want to know whether the debt had been sold by the original creditor to a third party. The least sophisticated consumer in deciding whether to pay money to a debt collector to satisfy an alleged debt, would want to know whether the debt collector represents the original creditor or some other, unknown, third party. The least sophisticated consumer in deciding whether to pay money to a debt collector to satisfy an alleged debt, would want to know the true identity of the debt collector's client, so that the least sophisticated consumer could determine whether to demand proof of the debt's ownership. Stated differently the false representations made by MRM and its employee in connection with efforts to collect the alleged debt from Mr. Apel were material misrepresentations.

33. The FDCPA does not require the consumer to provide *any reason at all* in order to dispute a debt. *Sambor v. Omnia Credit Servs.*, 183 F. Supp. 2d 1234 (D. Haw. 2002); (*Mendez v. M.R.S. Assoc.*, 2004 WL 1745779 *2 (N.D. Ill. Aug. 3, 2004) (a consumer is entitled to dispute the validity of a debt for a good reason, a bad reason, or no reason at all); *Whitten v.*

*ARS National Servs. Inc.*, 2002 WL 1050320 *4 (N.D. Ill. May 23, 2002) (imposing a requirement that a consumer have a 'valid' reason to dispute the debt is inconsistent with FDCPA); *Castro v. ARS National Servs., Inc.*, 2000 WL 264310 (S.D.N.Y. Mar. 8, 2000); *Frey v. Satter, Beyer & Spires*, 1999 WL 301650 (N.D. Ill. May 3, 1999); *DeSantis v. Computer Credit, Inc.*, 269 f.3d 159 (2nd Cir. 2001); *Mejia v. Marauder Corporation*, 2007 WL 806486 (N.D. Cal. 2007) (unlawful to suggest that proof of payment required for dispute).

34. Credit reporting by a debt collector constitutes an attempt to collect a debt. *See, e.g., Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993)(a creditor's report of a debt to a consumer reporting agency is a "powerful tool, designed, in part, to wrench compliance with payment terms from its cardholder"); *Matter of Sommersdorf*, 139 B.R. 700, 701 (Bankr.S.D. Ohio 1991); *Ditty v. CheckRite, Ltd.*, 973 F.Supp. 1320, 1331 (D.Utah 1997). Debt collectors frequently will threaten to harm the consumer's credit as a cost effective way to coerce payment of a small debt. However, Congress has placed limit on that collection tool

35. Two consumer protection laws, the FDCPA (regulating debt collection) and the Fair Credit Reporting Act ("FCRA") (regulating credit reporting) work together to empower the consumer to mitigate the harm that a debt collector can do to the consumer's credit.

36. The FDCPA makes it unlawful for a debt collector to communicate or threaten to communicate to any person credit information which is known or which should be known to be false, "including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8).

37. The FDCPA does not require the consumer to dispute the debt in writing in order to invoke the protections of 15 U.S.C. § 1692e(8). *See, Brady v. The Credit Recovery Company*,

*Inc.*, 160 F.3d 64 (1ˢᵗ Cir. 1998).

38. The FDCPA contains no limitation on the time during which a consumer may dispute a debt and trigger a debt collector's obligation to comply with 15 U.S.C. § 1692e(8).

39. The FCRA states that if a consumer has disputed a debt with the creditor or other furnisher of information (such as a debt collector), the furnisher may not report the debt to a consumer reporting agency unless it also discloses that the debt is disputed by the consumer. 15 U.S.C. § 1681s-2(a)(3). In turn, the consumer reporting agency must note in future consumer reports containing information regarding the account that the consumer disputes the debt.

40. It is unlawful for a debt collector to use "any false representation or deceptive means to collect or attempt to collect any debt. . . ." 15 U.S.C. § 1692e(10).

41. It is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken. 15 U.S.C. § 1692e(5).

42. When Mr. Apel verbally communicated by telephone to the MRM employee that Mr. Apel disputed the debt, MRM and its employee became obligated in any future communication with any third party (such as First Premier Bank, Asset Acceptance, LLC or the consumer reporting agencies) regarding the debt, to also communicate to the third party that the debt is disputed. 15 U.S.C. § 1692e(8).

43. MRM and its employee stated to Mr. Apel that MRM and its employee would not honor Mr. Apel's verbal dispute of the debt and thereby threatened to take action that MRM and its employee could not legally take or did not intend to take. The statement violated the FDCPA, 15 U.S.C. § 1692e(5), and Michigan law.

44. MRM and its employee made false representations to Mr. Apel regarding the

8

rights of a consumer to dispute a debt as afforded by the FDCPA and Michigan law. The false representations violated the FDCPA, 15 U.S.C. § 1692e(10), and Michigan law.

45. MRM and its employee made false representations to Mr. Apel regarding Mr. Apel's rights to dispute the debt. The false representations violated the FDCPA, 15 U.S.C. § 1692e(10), and Michigan law.

46. MRM and its employee falsely represented to Mr. Apel that Mr. Apel could not dispute the debt verbally and/or by telephone. The false representations violated the FDCPA, 15 U.S.C. § 1692e(10), and Michigan law.

47. MRM and its employee falsely represented to Mr. Apel that to dispute the debt, Mr. Apel was required to dispute the debt in writing. The false representation violated the FDCPA, 15 U.S.C. § 1692e(10), and Michigan law.

48. MRM and its employee falsely represented to Mr. Apel that to dispute the debt, Mr. Apel would need to obtain a written form from MRM, complete the form, and mail it back to MRM. The false representation violated the FDCPA, 15 U.S.C. § 1692e(10), and Michigan law.

49. MRM and its employee falsely represented to Mr. Apel that he would need to contact First Premier Bank to dispute the debt. The representation violated the FDCPA, 15 U.S.C. § 1692e(10), and Michigan law.

50. The least sophisticated consumer, upon hearing the false representations made by MRM and its employee that MRM and its employee would not honor and communicate Mr. Apel's dispute to MRM's client or any other third party, could be improperly coerced into paying a debt that the consumer does not owe, or is legitimately disputing, or that should be reported as disputed on the consumer's credit history. Stated differently, the false representations of MRM

and its employee regarding the consumer's right to dispute a debt, made in connection with efforts to collect the alleged debt from Mr. Apel, were material misrepresentations.

51. MRM and its employee made the above-stated misrepresentations to Mr. Apel for the animating purpose of inducing Mr. Apel to pay the alleged debt.

52. Upon information and belief, MRM communicated credit information regarding the debt to its client and/or other third parties without also communicating that the debt was disputed by Mr. Apel, and thereby violated the FDCPA and Michigan law.

53. The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).

54. MRM, to increase its business and profits, has knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

55. The acts and omissions of MRM and its employee done in connection with efforts to collect the alleged debt from Mr. Apel were done intentionally and wilfully.

56. MRM and its employee intentionally and wilfully violated the FDCPA and MOC.

57. As an actual and proximate result of the acts and omissions of defendant and its employee, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which she should be compensated in an amount to be established by

jury and at trial.

V.   **Claims for Relief**

### Count 1 – Fair Debt Collection Practices Act

58.   Plaintiff incorporates the foregoing paragraphs by reference.

59.   Defendant has violated the FDCPA. Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

    a)   Defendant violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt.

**Wherefore,** plaintiff seeks judgment against defendant for:

    a)   Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

    b)   Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

    c)   Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

    d)   Such further relief as the court deems just and proper.

### Count 2 – Michigan Occupational Code

60.   Plaintiff incorporates the foregoing paragraphs by reference.

61.   Defendant has violated the MOC. Defendant's violations of the MOC include, but are not necessarily limited to, the following:

    a)   Defendant violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

    b)   Defendant violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or

threatened, and (ii) the legal rights of a creditor or debtor;

c) Defendant violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendant for:

a) Actual damages pursuant to M.C.L. § 339.916(2);

b) Treble the actual damages pursuant to M.C.L. § 339.916(2);

c) Statutory damages pursuant to M.C.L. § 339.916(2); and

d) Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

### Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: September 28, 2012

/s/ Phillip C. Rogers
Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com